JUANITA EPPLEY *v.* G. WILLIAM EPPLEY.

[No. 1-1274A176. Filed February 6, 1976.]

*John C. Green, Smith and Jones,* of Indianapolis, *Peter L. Obremskey, Parr, Richey, Obremsky, Pedersen & Morton,* of Lebanon, for appellant.

*C. V. Malan, Sonia J. Leerkamp,* Associate, of Noblesville, *James L. Goodwin,* of Lebanon, for appellee.

LYBROOK, J.—Defendant-appellant Juanita Eppley (Juanita) appeals from a judgment granting her a divorce from plaintiff-appellee G. William Eppley (Eppley), presenting the following issues for review:

(1) Whether the trial court abused its discretion in:
   (a) awarding child support of $150 per month;
   (b) awarding alimony to Juanita of $30,000;
   (c) awarding Eppley sole ownership of certain real estate in Brown County; and
   (d) ordering that each party pay one-half of the costs below.

(2) Whether it was error to base evaluations of real and personal property of the parties on appraisals made at the time of separation.

(3) Whether it was error to fail to require Eppley to secure by collateral the $30,000 alimony award.

(4) Whether it was reversible error to refuse to require Eppley's attorneys to produce certain tape recordings.

The record discloses that Eppley and Juanita were married in 1962, separated on January 10, 1973, and divorced on June 28, 1974. It was Juanita's fourth marriage and Eppley's second. One child, a daughter named Ann, was born to the marriage. At the time of trial Eppley was 51 years of age, Juanita 50, and Ann. 9. During the marriage, Eppley was employed by Prudential Insurance Company at a substantial income ranging from about $17,000 in 1962 to about $90,000 in 1973.

This matter was initiated by Eppley on January 12, 1973, by filing a complaint for divorce in the Hamilton Superior Court. Trial was held on May 14, 1974, before the Boone

Circuit Court, and judgment was decreed in favor of Juanita on her amended cross-claim for absolute divorce. Custody of Ann was awarded to Juanita and Eppley was ordered to satisfy Ann's major medical, dental, and optical expenses and to pay support of $150 per month. A property settlement was also ordered by the trial court, the specifics of which shall be addressed later.

I

Initially Juanita argues that the trial court abused its discretion in several of its rulings, each of which we shall consider.

(A) *Child Support*

Juanita argues that since the uncontroverted evidence reveals that each month "the ordinary and necessary living expenses to rear Ann, . . . were: . . .

| | |
|---|---|
| Apartment | $265.00 |
| Telephone | 20.00 |
| Water Softener | 7.50 |
| Milk | 20.00 |
| Auto Expenses | 100.00 |
| Paper | 4.00 |
| Dry Cleaning | 20.00 |
| Hairdresser | 16.00 |
| Dancing Lessons | 18.00 |
| School Lunches | 9.20 |
| Clothing | 100.00 |
| Dog | 10.00 |
| Doctor | 50.00 |
| Miscellaneous Expenses | 50.00 |
| Baby Sitter | 100.00 |
| Brownie Scouts and Birthdays | 50.00 |
| | $839.70" |

it was a clear abuse of judicial discretion to award only $150 per month child support. She argues that the  evidence which discloses monthly expenses for Ann of over $800 re-

quires "a support figure of at least that much." We do not agree.

Initially, we note that Eppley's child support obligation, as its name implies, represents the extent of his duty to contribute to Ann's support as determined by the trial court. It is not for the support of Juanita. Moreover, the determination of the amount of child support to be paid, if any, is a matter firmly committed to the discretion of the trial court. As such it is reviewable only on the ground of abuse, and will be reversed or modified only where an abuse is clearly shown. *Dragoo* v. *Dragoo* (1962), 133 Ind. App. 394, 182 N.E.2d 434; *Chrisman* v. *Chrisman* (1973), 156 Ind. App. 388, 296 N.E.2d 904.

Examining the evidence presented herein, we find no abuse of discretion demonstrated. While it is true that Eppley was ordered to pay $150 per month, this responsibility does not represent the total extent of his child support obligations for Ann. He is also obligated to satisfy dental, medical, and optical expenses, and has made separate provisions for Ann's future needs through a trust arrangement. Additionally, despite the uncontroverted nature of the evidence concerning the "necessary" expenses for raising Ann, suffice it to say that the figures impress this court as being somewhat beyond the realm of necessity for a nine year old girl. It is the function of the trial judge to weigh this evidence in light of everyday experiences to determine a reasonable amount of support. Further, it is neither contrary to law nor unreasonable to expect the custodial parent to contribute to the support of Ann. Accordingly, we find no abuse of discretion demonstrated under this issue.

(B) *Alimony and Real Estate in Brown County*

Juanita's next two specifications of abuse of discretion are directed to the alimony award and the decision awarding Eppley sole ownership of certain real estate in Brown County. Since both of these specifications are in fact disputes with

the property settlement, they shall be addressed together. See, Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

The evidence most favorable to the decision of the trial court reveals the following assets on the date of separation:

| | | |
|---|---|---|
| (a) | Household goods at Brown County Home | $2,350.00 |
| (b) | Apartment furnishings | 6,922.00 |
| (c) | Gun collection | 2,200.00 |
| (d) | American Home Stock (150 shares) | 6,112.50 |
| (e) | Beatrice Foods (100 shares) | 1,975.00 |
| (f) | Delta Airlines (5 shares) | 268.75 |
| (g) | National Homes (150 shares) | 487.50 |
| (h) | Zurn Industries (6 shares) | 380.00 |
| (i) | Mutual Fund (233 shares) | 2,064.38 |
| (j) | Tax Exempt Inv. | 3,559.29 |
| (k) | Husband's watch and ring | 1,390.00 |
| (l) | Wife's jewelry (acquired after marriage) | 3,010.00 |
| (m) | Fur coat and mink stole | 3,440.00 |
| (n) | 1969 auto | 800.00 |
| (o) | 1972 auto (3,800-3,236 (lien)) | 564.00 |
| (p) | Checking account at Indiana Nat'l Bank | 1,272.00 |
| (q) | Real Estate | 20,154.59 |
| (r) | Stock proceeds[1] | –0– |
| (s) | Prudential Investment Program | 17,212.00 |
| (t) | New York Life Insurance (cash value) | 3,750.00 |
| (u) | Prudential Life Insurance (cash value) | 1,516.00 |
| (v) | Indiana National Bank checking acct. | 3,383.50 |
| (w) | Insurance Policy on wife (cash value) | 2,000.00 |
| | TOTAL _____ | $84,811.71 |

Of these assets, Juanita received the following:

| | | |
|---|---|---|
| (a) | Apartment Furnishings | $ 6,922.00 |
| (b) | Jewerly | 3,010.00 |
| (c) | Fur coat and Mink stole | 3,440.00 |
| (d) | 1969 Auto | 800.00 |
| (e) | Insurance policy on wife | 2,000.00 |
| (f) | Alimony | 30,000.00 |
| | TOTAL _____ | $46,172.00 |

1. In 1972, Eppley sold certain stock and received $12,699.23. Due to the nature of this asset, it is necessarily reflected among the others listed and therefore should not be included again.

Juanita argues that in light of the extent of Eppley's assets and his income, it was an abuse of discretion to award her *only* $30,000.00 as alimony. Juanita recognizes the standards applied by this court in reviewing a property settlement, but nevertheless asserts that it was a clear abuse of discretion to make such a "meager" alimony award and to grant Eppley sole ownership of the real estate in Brown County.

As a general proposition, it is well settled that a divorce court has not only the power but a mandatory duty to adjust and adjudicate the property rights of the parties. *Draime* v. *Draime* (1961), 132 Ind. App. 99, 173 N.E.2d 70; *Plese* v. *Plese* (1970), 146 Ind. App. 545, 257 N.E.2d 318; *Snyder* v. *Snyder* (1965), 246 Ind. 292, 205 N.E.2d 159. In such an adjudication, the court has broad discretionary power to decree that certain properties be transferred between the parties and to determine whether alimony is appropriate. *Grant* v. *Grant* (1967), 141 Ind. App. 521, 230 N.E.2d 339; *Shula* v. *Shula* (1956), 235 Ind. 210, 132 N.E.2d 612. In determining whether alimony is to be awarded and, if so, its extent the trial court should consider many factors including the existing property rights of the parties, the husband's estate, the wife's estate, and the ability of both to earn money. *Boshonig* v. *Boshonig* (1971), 148 Ind. App. 496, 267 N.E.2d 555. However, no single test or factor should control the decision. Moreover, it must be remembered that alimony in Indiana is nothing more than a property settlement worked out by the court. *Doner* v. *Doner* (1973), 158 Ind. App. 306, 302 N.E.2d 511. It is not awarded as future support for a wife nor is it intended as a medium for providing for financial compensation for injured sensitivities during marriage. *Shula* v. *Shula, supra.*

In adjudicating the property rights of the parties, including the question of alimony, the trial court is by necessity vested with broad discretionary powers. This court will not interfere with the exercise of sound judicial discretion in reaching a property settlement unless it is

apparent that the discretion has been abused. *Loeb* v. *Loeb* (1973), 261 Ind. 193, 301 N.E.2d 349. Examining the record before us, we are unable to say that the trial court has abused its discretion in the property settlement. Juanita received property and alimony worth $46,172.00, which is more than 50% of the parties' total assets. Accordingly, we find no error under this issue.

(C) *Costs*

Next, Juanita maintains that the trial court abused its discretion in ordering her and Eppley to each bear one-half of the court costs. As authority, Juanita cites IC 1971, 34-1-32-1 (Burns Code Ed.), which provides:

> "*Costs.*—In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law."

In *Lucas* v. *Lucas* (1949), 119 Ind. App. 360, 86 N.E.2d 300, this court stated that where certain issues of a divorce action are decided in favor of one party and other issues in favor of the other party, it is mandatory that the court apportion costs proportionately. To circumvent this rule, Juanita flatly asserts that all issues herein were decided in her favor. We do not agree.

Had all the issues been decided in Juanita's favor, there would be no need to appeal the decision below except for the issue of costs. Juanita's actions in raising and arguing other issues, brings this case within the guidelines of *Lucas*. The apportionment of costs was not an abuse of discretion or contrary to law.

## II.

Secondly, Juanita argues that it was reversible error for the trial court to base property values on appraisals made at the time of separation. She contends that a property division based on valuation at the time of separation ignores any change in value that occurs between that time and the time of final hearing.

While we agree with Juanita's conclusion concerning the effect of a valuation at time of separation, we are unable to construe this generality as reversible error. We know of no rule of law, nor has Juanita directed our attention to any, which mandates that property valuations in a divorce action be ascertained as of the date of final hearing and not as of the date of separation. Indeed, such an inflexible rule might have drawbacks in that it could encourage parties to secrete, conceal or otherwise divest themselves of certain properties during the period between separation and divorce so as to distort the true nature and value of marital property. Alternatively, an inflexible rule requiring valuation at date of separation could, in another case, distort the nature and value of marital property.

For the foregoing reasons, the determination of the date of valuation of property is best left to the trial judge's discretion guided by the equities in the case. Since Juanita has failed to demonstrate substantial prejudice resulting from valuation on date of separation, we find no reversible error.

### III.

Thirdly, Juanita argues that it was reversible error to not require Eppley to secure by collateral the $30,000 alimony award. Cited as authority is IC 1971, 31-1-12-17 (Burns Code Ed.), which in pertinent part provides:

". . . In determining the method of the payment of the alimony the court may require that it be paid in gross or in periodic payments, either equal or unequal, and if to be paid in periodic payments the court may further provide for their discontinuance or reduction upon the death or remarriage of the wife, and, in his discretion, the court may further provide for such security, bond, or other guarantee as shall be satisfactory to the court for the purpose of securing the obligation to make such periodic payments. . . ."

68

This statute clearly vests the question of security for alimony in the sound discretion of the trial court. Having reviewed the record, we find no abuse of that discretion demonstrated.

## IV.

Finally, Juanita argues that the trial court erred in refusing to require the production of certain tape recordings of conversations between her and Eppley during their separation. Juanita maintains that this ruling and suppression of any further evidence concerning the taped conversations "denied Juanita Eppley a fair trial by not permitting her to use the tapes for rehabilitation purposes."

Examining the record however, we find no mention of rehabilitation of Juanita's testimony as a ground advanced at trial in support of her objection to the trial court's ruling. We therefore must rule that Juanita has waived any error under this issue, for it is well settled that a party cannot change or add to his objections or the grounds thereof in the reviewing court. See, *Cooper* v. *State* (1972), 259 Ind. 107, 284 N.E.2d 799 and cases therein cited.

There being no reversible error demonstrated, the judgment of the trial court should be and is hereby affirmed.

Judgment affirmed.

Robertson, C. J. and Lowdermilk, J., concur.

NOTE.—Reported at 341 N.E.2d 212.